**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

RAY ELLIOTT;
TREVOR ALLEY;
MICHAEL VITCO;
FIREARMS POLICY COALITION, INC.; and
COLORADO STATE SHOOTING ASSOCIATION,

*Plaintiffs*,

v.

CITY AND COUNTY OF DENVER, COLORADO;
JARED POLIS, in his official capacity as the Governor of Colorado;
PHILLIP J. WEISER, in his official capacity as Attorney General of Colorado;
ARMANDO SALDATE III, in his official capacity as Director of the Colorado Bureau of Investigation;
COLONEL MATTHEW C. PACKARD, in his official capacity as Chief of the Colorado State Patrol; and
JOHN WALSH, in his official capacity as District Attorney for the City and County of Denver, Colorado,

*Defendants*.

---

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

Plaintiffs RAY ELLIOTT, TREVOR ALLEY, MICHAEL VITCO, FIREARMS POLICY

COALITION, INC. ("FPC"), and COLORADO STATE SHOOTING ASSOCIATION ("CSSA")

(collectively, "Plaintiffs"), by and through counsel of record, bring this Complaint against

Defendants, the CITY AND COUNTY OF DENVER, COLORADO ("Denver" or "the City") and

officials of the State of Colorado (the "State," and collectively, the "State Defendants") responsible

for enforcing laws infringing the right of law-abiding, peaceable citizens to keep and bear

commonly possessed firearms and ammunition magazines for defense of self and family and for

other lawful purposes, and allege as follows:

**INTRODUCTION**

1.      The Second Amendment to the United States Constitution guarantees "the right of the people to keep and bear Arms." U.S. CONST. amend. II. Under this constitutional provision, Plaintiffs, including Plaintiff Elliott, Plaintiff Alley, Plaintiff Vitco, and all other law-abiding citizens of Colorado and residents of the City and County of Denver have a fundamental, constitutionally guaranteed right to keep and bear common firearms for defense of self, family, and community, and for other lawful pursuits.

2.      But Denver has adopted a flat prohibition on carrying, storing, keeping, manufacturing, selling, or otherwise possessing many common firearms—tendentiously labeled "[a]ssault weapon[s]" (as defined in Denv., Colo., Rev. Mun. Code ch. 38, art. IV, § 38-116(1))— making it a crime for law-abiding citizens to exercise their fundamental right to keep and bear such arms. *See* Denv., Colo., Rev. Mun. Code ch. 38, art. IV, § 38-121(c). While the law is framed as an "assault weapons" ban, it effectively operates as a magazine capacity restriction, as it bars semiautomatic centerfire rifles and handguns equipped with magazines exceeding fifteen rounds.

3.      Colorado and Denver also have adopted separate prohibitions on carrying, storing, selling, transferring, or otherwise possessing common ammunition feeding devices by ordinary citizens, making it a crime for law-abiding citizens to exercise their fundamental right to keep and bear such arms. *See id.* § 38-121(g); COLO. REV. STAT. ANN. § 18-12-302(1)(a). These ordinary— yet banned—magazines are arbitrarily deemed to be "large-capacity" because they are capable of holding more than 15 rounds of ammunition.

4.      The City's limited set of exemptions for certain persons and purposes from its blanket ban does not allow typical law-abiding citizens to keep and bear these common firearms.

2

*See* Denv., Colo., Rev. Mun. Code ch. 38, art. IV, §§ 38-121(c)(1)–(2), 38-121(d), 38-121(e), 38-121(g)(1)–(3).

5.      Likewise, the State's limited set of exceptions to its magazine ban does not allow typical law-abiding citizens to keep and bear these common items. *See* COLO. REV. STAT. § 18-12-302(3).

6.      Denver's enactment and enforcement of the prohibition on common semiautomatic firearms, tendentiously and inaccurately labeled "assault weapons," and on certain ammunition feeding devices arbitrarily deemed to be of "large capacity," denies individuals who reside in Denver of the ability to exercise their fundamental, individual right to keep and bear common arms.

7.      State Defendants' enforcement of the prohibition on certain ammunition feeding devices arbitrarily deemed to be of "large capacity" likewise denies citizens of the State of Colorado of the ability to exercise their fundamental, individual right to keep and bear common arms.

8.      The plain text of the Second Amendment protects the conduct the Plaintiffs seek to engage in because it "extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 28 (2022) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 582 (2008)). By prohibiting Plaintiffs from possessing common semiautomatic firearms and ammunition feeding devices, Defendants have prevented them from "keeping and bearing Arms" within the meaning of the Amendment's text. *See Wolford v. Lopez*, No. 24-1046, 609 U.S. __, 2026 WL 1825723, slip op. at 7 (2026) (explaining that the plain-text inquiry asks whether the challenged law applies to "the people," concerns "Arms," and restricts the "keep[ing]" or "bear[ing]" of arms).

3

As a result, "[t]o justify its regulation, the government . . . must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17; *see also Wolford*, slip op. at 7–8.

9.      Here, Defendants cannot make such demonstration. Once the Second Amendment's plain text covers Plaintiffs' proposed conduct, the challenged laws are "presumptively unconstitutional," and Defendants bear the burden of showing that their restrictions are consistent with the historical understanding of the right. *Wolford*, slip op. at 7–8; *Bruen*, 597 U.S. at 24. *Heller* and *Bruen* have already established the *only* historical practice that allows a particular type of arm to be banned—historical restrictions on "dangerous and unusual weapons." *Heller*, 554 U.S. at 627; *Bruen*, 597 U.S. at 47. But to be banned under this historical practice, an arm must be both dangerous *and* unusual. *Caetano v. Massachusetts*, 577 U.S. 411, 417 (2016) (Alito, J., concurring). Arms that are in common use—as the firearms and magazines Defendants have banned unquestionably are—*cannot* be unusual or dangerous. Therefore, they cannot be banned, and the Colorado and Denver laws challenged herein violate the Second Amendment.

## JURISDICTION & VENUE

10.      This Court has subject matter jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331 and 1343.

11.      Plaintiffs seek remedies under 28 U.S.C. §§ 1651, 2201, and 2202, and 42 U.S.C. §§ 1983 and 1988.

12.      Venue lies in this Court under 28 U.S.C. § 1391(b)(1) and (b)(2).

**PARTIES**

**Plaintiffs**

13.      Plaintiff Ray Elliott is a natural person, a resident of Denver, Colorado, an adult over the age of 21, a citizen of the United States, and legally eligible under federal and state law to possess and acquire firearms. Plaintiff Elliott is a member of Plaintiffs Firearms Policy Coalition, Inc. and Colorado State Shooting Association.

14.      Plaintiff Trevor Alley is a natural person, a resident of Denver, Colorado, an adult over the age of 21, a citizen of the United States, and legally eligible under federal and state law to possess and acquire firearms. Plaintiff Alley is a member of Plaintiffs Firearms Policy Coalition, Inc. and Colorado State Shooting Association.

15.      Plaintiff Michael Vitco is a natural person, a resident of Denver, Colorado, an adult over the age of 21, a citizen of the United States, and legally eligible under federal and state law to possess and acquire firearms. Plaintiff Vitco is a member of Plaintiffs Firearms Policy Coalition, Inc. and Colorado State Shooting Association.

16.      Plaintiff Firearms Policy Coalition, Inc. is a nonprofit membership organization incorporated under the laws of Delaware with its principal place of business in Clark County, Nevada, with members across the country. FPC works to create a world of maximal human liberty and freedom and to promote and protect individual liberty, private property, and economic freedoms. It seeks to protect, defend, and advance the People's rights, especially but not limited to the inalienable, fundamental, and individual right to keep and bear arms and protect the means by which individuals may exercise the right to carry and use firearms. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC brings this action on behalf of its members,

5

including the Individual Plaintiffs, who are adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein.

17.    Plaintiff Colorado State Shooting Association ("CSSA") is a nonprofit advocacy organization incorporated in 1926 under the laws of Colorado with its principal place of business in Falcon, Colorado. CSSA is a 501(c)(4) organization under Title 26 of the United States Code. CSSA is an official state association of the National Rifle Association. It is CSSA's mission to advance, preserve, and exercise the natural right of gun ownership by all Coloradans. CSSA has thousands of members across the State of Colorado. CSSA brings this action on behalf of its members, including the Individual Plaintiffs, who are adversely and directly harmed by Defendants' enforcement of the laws, regulations, policies, practices, and customs challenged herein.

**<u>Defendants</u>**

18.    The City and County of Denver is a Colorado municipal corporation.

19.    Defendant Jared Polis is sued in his official capacity as the Governor of Colorado. The Colorado Constitution states that the "supreme executive power of the state shall be vested in the governor, who shall take care that the laws be faithfully executed." COLO. CONST. art. IV, § 2. The Governor, in his official capacity, possesses authority to enforce (and control the enforcement of) the State's magazine ban. *See Cooke v. Hickenlooper*, No. 13-cv-01300, 2013 WL 6384218, at *8 (D. Colo. Nov. 27, 2013), *aff'd in part sub nom. Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537 (10th Cir. 2016). For example, the Governor has authority to charge the Colorado Attorney General with the responsibility to prosecute violations of this law. *See* COLO. REV. STAT. § 24-31-101(1)(b). Defendant Polis's official address is 200 E. Colfax Avenue, Room 136, Denver, CO 80203.

20.     Defendant Phil Weiser is sued in his official capacity as Attorney General of the State of Colorado. As Attorney General of Colorado, Defendant Weiser exercises, delegates, or supervises the powers and duties of the Colorado State Department of Law, including the duty to enforce Colorado law. Further, if "required to do so by the governor" Defendant Weiser, as Attorney General, would be required to "appear for the state and prosecute and defend all actions and proceedings, civil and criminal, in which the state is a party or is interested." *See* COLO. REV. STAT. § 24-31-101(1)(b). Defendant Weiser's official address is 1300 Broadway, 10th Floor, Denver, CO 80203.

21.     Defendant Armando Saldate III is sued in his official capacity as Director of the Colorado Bureau of Investigation ("CBI"). As Director of the CBI, Defendant Saldate is "the chief administrative officer of the bureau and [] also . . . an agent." *Id.* § 24-33.5-404. He is tasked with "supervis[ing] and direct[ing] the administration and all other activities of the bureau." *Id*. All agents of the CBI, including the Director, are vested with the powers of peace officers of the State and have all the powers of any sheriff or police or other peace officer. *Id.* § 24-33.5-409. All agents of the CBI are tasked with "perform[ing] duties in the investigation, detection, and prevention of crime and the enforcement of the criminal laws of this state," including the State's magazine ban. *Id*. Defendant Saldate's official address is 690 Kipling Street, Lakewood, CO 80215.

22.     Defendant Colonel Matthew C. Packard is sued in his official capacity as Chief of the Colorado State Patrol. As Chief of the Colorado State Patrol, Defendant Packard is "the executive head and senior administrative officer of the Colorado state patrol" charged with "supervis[ing] and direct[ing] the administration of all activities of the Colorado state patrol," and Defendant Packard is himself "an officer of the Colorado state patrol." COLO. REV. STAT. § 24-33.5-205. All officers of the State Patrol have the power to make arrests for violation of any

criminal law of the State. *Id.* § 24-33.5-212(1)(a)(I). All officers of the State Patrol are commanded to make arrests when a valid warrant for arrest issues. Defendant Packard's official address is 700 Kipling Street, Lakewood, CO 80215.

23.     Defendant John Walsh is sued in his official capacity as District Attorney for the City and County of Denver, Colorado, the State's 2nd Judicial District. As District Attorney, Defendant Walsh is charged with "appear[ing] in behalf of the state and the several counties of his . . . district" "[i]n all indictments, actions, and proceedings" to which the state or county may be a party. *See* COLO. REV. STAT. § 20-1-102(1)(a). Those duties extend to any prosecutions within Defendant Walsh's district for violations of the State's magazine ban. Plaintiffs Alley, Vitco, and Elliott reside in the 2nd Judicial District. Defendant Walsh maintains an office at 370 17th Street, Suite 5300, Denver, CO 80202.

<b><u>FACTUAL ALLEGATIONS</u></b>

**I.     DENVER'S UNCONSTITUTIONAL MAGAZINE BAN**

24.     Denver makes it "unlawful to carry, store, keep, manufacture, sell, or otherwise possess assault weapons within the City and County of Denver[.]" Denv., Colo., Rev. Mun. Code ch. 38, art. IV, § 38-121(c).

25.     Although it is phrased as a ban on firearms, this so-called "assault weapon" restriction is, in fact, a ban on possessing firearms alongside magazines capable of holding more than 15 rounds of ammunition. That is because Denver defines "[a]ssault weapon" as follows:

Assault weapon means any of the following firearms:

a.     Any semiautomatic pistol or centerfire rifle, *either of which have a fixed or detachable magazine with a capacity of more than fifteen (15) rounds*.

b.     Any semiautomatic shotgun *with* a folding stock or *a magazine capacity of more than six (6) rounds or both*.

8

c.      Any part of combination of parts designed or intended to convert a firearm into a weapon identified in paragraphs a or b of this subsection (1), if those parts are in the possession or under the control of the same person.

d.      Any firearm which has been modified to be operable as a weapon identified in paragraphs a or b of this subsection (1).

*Id.* § 38-116(1) (emphasis added).

26.     Although the ordinance is subject to exemptions which, for example, allow possession by persons who applied for and were granted a permit for their semiautomatic firearm by the Denver Police Department within 60 days of November 14, 1989, *see id.* § 38-121(e), a separate provision of the municipal code makes it unlawful for any such permit holder to sell or transfer possession of such firearm within the City and County of Denver, *see id.* § 38-121(f). The upshot of the ordinance is to deny ordinary, peaceable people who reside in the City the ability to acquire the banned firearms in conjunction with the banned magazines and to destroy the legal market for the same.

27.     Any person convicted of violating the ordinance is subject to a fine of five hundred dollars for a first offense, seven hundred fifty dollars for a second offense within five years, and nine hundred ninety-nine dollars for a third or subsequent offense, "in addition to any other penalty imposed," which may include a sentence of incarceration "not to exceed three hundred (300) days" as provided by the general penalty provision of the municipal code. *See id.* §§ 38-128, 1-13(b).

28.     Denver separately makes it "unlawful to carry, store, or otherwise possess a large capacity ammunition feeding device which can hold or may be modified to hold more than fifteen [] rounds[.]" *Id.* § 38-121(g).

29.     This ordinance defines a "[l]arge capacity ammunition feeding device" as "[a] magazine, belt, drum, feed strip, or similar device for a firearm manufactured after September 13, 1994, that has a capacity of, or that can be readily restored or converted to accept, more than fifteen

9

(15) rounds of ammunition," excluding "an attached tubular device designed to accept, and capable of operating only with, .22 caliber rimfire ammunition, or a fixed device for a manually operated firearm, or a fixed device for a firearm listed in 18 U.S.C. 922, appendix A." *Id.* § 38-116(11).

30.     This ordinance is subject to similar exceptions as Denv., Colo., Rev. Mun. Code ch. 38, art. IV § 38-121(c), which do not permit ordinary, peaceable Denver residents to acquire magazines capable of holding more than 15 rounds of ammunition. *Id.* § 38-121(g).

31.     Both Denv., Colo., Rev. Mun. Code ch. 38, art. IV, § 38-121(g) and Denv., Colo., Rev. Mun. Code ch. 38, art. IV, § 38-121(c) (collectively, the "Denver Ban") are subject to the same penalty regime.

## II.     COLORADO'S UNCONSITUTIONAL MAGAZINE BAN

32.     The relevant portion of Colorado's magazine ban states that "a person who sells, transfers, or possesses a large-capacity magazine commits a class 1 misdemeanor." COLO. REV. STAT. § 18-12-302(1)(a).

33.     The term "[l]arge-capacity magazine" is defined as follows:

(I) A fixed or detachable magazine, box, drum, feed strip, or similar device capable of accepting, or that is designed to be readily converted to accept, more than fifteen rounds of ammunition;

(II) A fixed, tubular shotgun magazine that holds more than twenty-eight inches of shotgun shells, including any extension device that is attached to the magazine and holds additional shotgun shells; or

(III) A nontubular, detachable magazine, box, drum, feed strip, or similar device that is capable of accepting more than eight shotgun shells when combined with a fixed magazine.

*Id.* § 18-12-301(2)(a).

34.     Although Colorado's law is subject to exceptions which, for example, allow possession by persons who owned a now-banned magazine on July 1, 2013 and have maintained continuous possession of the same, *see id.* § 18-12-302(2)(a), the statute nevertheless makes it unlawful for these lawful possessors to sell or transfer possession of such magazine, *see id.* § 18-

12-302(1)(a). The upshot of the State's law is to deny ordinary, peaceable citizens the ability to acquire and possess the banned magazines and to destroy the legal market for the same.

35.    Any person convicted of violating the Colorado Ban is guilty of a class 1 misdemeanor. *Id.* A class 1 misdemeanor is punishable by a sentence of up to 364 days imprisonment, a fine of not more than one thousand dollars, or both. *Id.* § 18-1.3-501(1)(a.5).

### III.    AMMUNITION MAGAZINES CAPABLE OF HOLDING MORE THAN 15 ROUNDS OF AMMUNITION ARE IN COMMON USE

36.    Although Denver and Colorado describe magazines that can accept more than 15 rounds of ammunition as "large capacity," this is a misnomer. Magazines capable of holding more than 15 rounds of ammunition—and firearms equipped with them—are normal features of firearms in the United States and are more accurately described as "standard capacity magazines."

37.    In previous litigation, the State of Colorado (through its Governor) entered into several stipulations that underscore the commonality of the banned magazines. For example, Colorado stipulated that in states without laws regulating magazine capacity, AR-15 platform rifles are usually sold at retail with a detachable box magazine capable of holding up to 30 rounds, and the majority of owners of AR-15 platform rifles use magazines with a capacity of 20 and/or 30 rounds. *See* Prop. Final Pretrial Order at 21, *Colorado Outfitters Assoc. v. Hickenlooper*, No. 13-cv-1300 (D. Colo. Jan. 31, 2014), ECF No. 119 ("Prop. Pretrial Order").

38.    Colorado also stipulated that of the "[m]ore than 300,000,000 firearms . . . lawfully owned in the United States[,] [a] significant percentage of firearms privately owned are semi-automatic, most of which utilize a detachable box magazine," and that "the number of lawfully owned semi-automatic firearms that utilize a detachable box magazine with a capacity greater than 15 rounds is in the tens of millions." *See* Prop. Pretrial Order at 20.

11

39.    Colorado additionally stipulated that "[m]any full-sized 9mm semi-automatic pistols are sold at retail with magazines with capacities of greater than 15, for example the Glock 17, which is one of the most popular handguns sold in the United States." *See id.* at 22.

40.    And Colorado further stipulated that semiautomatic firearms equipped with magazines like those banned by the State are used for multiple lawful purposes, "including recreational target shooting, competition shooting, collecting, hunting, and are kept for home defense and defense outside the home." *See id.* at 21. Colorado also stipulated that in the State of Colorado alone, the number of magazines like those banned by the State is in the millions. *Id.* at 23.

41.    The facts underlying these stipulations are undeniable. According to the 2021 National Firearms Survey, for example, 21.6% of firearm owners, approximately 18 million Americans, have owned handgun magazines that hold more than 15 rounds of ammunition, and 24.8%, approximately 20 million Americans, have owned rifle magazines of that size. William English, *2021 National Firearms Survey: Analysis of Magazine Ownership and Use* at 20, GEO. UNIV. RSCH. PAPER NO. 4444288 (May 4, 2023), https://perma.cc/9HCQ-KKN7. That same survey found that 21.2% of Colorado gun owners (approximately 325,197 individuals) indicated that they have owned handgun magazines that hold more than 15 rounds and that 26.6% of Colorado gun owners (approximately 407, 974 individuals) indicated that they have owned rifle magazines that hold more than 15 rounds. *Id.* at 9, 13. Those percentages translate to approximately 3,019,719 handgun magazines with capacities of more than 15 rounds owned in Colorado and approximately 3,994,837 rifle magazines with capacities of more than 15 rounds owned in Colorado. *Id.* at 19. Across the United States firearm owners have owned approximately 170 million handgun magazines that hold more than 15 rounds and approximately 214 million rifle magazines that hold

more than 15 rounds. *Id.* at 19–20. The survey data also revealed that magazines capable of holding more than fifteen rounds are commonly possessed for lawful purposes including home defense, recreational target shooting, hunting, and defense outside the home. *Id.* at 4.

42.     The prevalence of these magazines should not come as a surprise. Many popular handguns are typically sold with magazines holding more than 15 rounds of ammunition, and standard issue magazines for many popular rifles—including the most popular semiautomatic rifles in the country—similarly have a capacity of over 15 rounds. These include the AR-15, which the Supreme Court has recognized as "the most popular rifle in the country," *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 297 (2025), and which are commonly sold with standard magazines capable of holding 20 or 30 rounds, *see* David B. Kopel, *The History of Firearm Magazines and Magazine Prohibitions*, 78 ALB. L. REV. 849, 858–59 (2015). Similarly, many of the most popular semiautomatic handguns sold in the United States are manufactured and sold standard with magazines capable of holding more than fifteen rounds of ammunition. GUN DIGEST 2018 374, 386–88, 408 (Jerry Lee & Chris Berens eds., 72d ed. 2017).

43.     Magazines capable of accepting more than 15 rounds of ammunition are common throughout the country. Indeed, a large majority of states do not impose any restrictions on magazine capacity.

44.     There is no historical tradition of prohibiting the carry, storage, or possession of magazines capable of holding more than fifteen rounds. Magazine bans were unknown in the United States before the 20th century. Bans like Denver's and Colorado's are a recent phenomenon.

45.     This is true even though firearms capable of holding multiple rounds have existed since the late 15th century, and firearms capable of firing more than fifteen rounds without reloading have existed at least since the late 16th century. *See* Kopel, *The History of Firearm*

*Magazines, supra*, at 852 (describing "a sixteen-shooter created around 1580, using 'superposed' loads (each round stacked on top of the other)"). There is a longstanding history, stretching back well before the founding, of efforts to develop reliable repeating firearms.

46.     Multiple round firearm technology quickly developed from multi-shot wheel lock rifles to repeating, magazine-fed rifles, with the English military employing magazine-fed repeating firearms as early as 1658. Clayton E. Cramer & Joseph E. Olson, *Pistols, Crime, and Public Safety in Early America*, 44 WILLAMETTE L. REV. 699, 716 (2008) (citing A. V. B. NORMAN & DON POTTINGER, ENGLISH WEAPONS & WARFARE: 449–1660, 206–07 (1979)); *see also* David B. Kopel & Joseph G.S. Greenlee, *The History of Bans on Types of Arms Before 1900*, 50 NOTRE DAME J. LEG. 223, 232–36 (2024) (discussing the history of English repeating firearms).

47.     Repeating firearms were known in colonial and Founding-era America as well. For example, in 1722 a "Boston gunsmith[] advertised a twenty-shot repeater, which he would demonstrate for a fee." Kopel & Greenlee, *supra*, at 255 (collecting additional examples from this period). In 1777, Joseph Belton demonstrated a repeating rifle that could hold 16 rounds of ammunition to American military leaders, resulting in an order for some such rifles by the Continental Congress (though the deal fell through when Belton demanded too high a price). *Id.* And Meriwether Lewis carried a Girardoni air rifle (which, "[a]lthough an air gun . . . was ballistically equal to a powder gun, and could take an elk with one shot"), with a 22-round tubular, spring-loaded magazine on his expedition with William Clark. *Id.* at 256–57; *see also* JAMES B. GARRY, WEAPONS OF THE LEWIS AND CLARK EXPEDITION 100–01 (2012).

48.     "Repeater" firearms were extremely popular in the 19th century and came in many forms. "The first American military contract for repeating firearms was the US Navy's 1813 purchase of repeaters from Joseph Chambers, who also sold many to the State of Pennsylvania for

its militia." Kopel & Greenlee, *supra*, at 268. The *New York Evening Post* in 1821 lauded Isaiah Jennings for inventing a repeater "importan[t] both for public and private use," whose "number of charges may be extended to 15, or even 20." *Jennings' Guns*, N.Y. EVENING POST, Mar. 30, 1822, *reprinted in* The Charleston Daily Courier, Apr. 9, 1822, at 2, https://perma.cc/K3ZE-TZFU.

49. Around the time of the Civil War, multi-round rifles became commonplace. The 16-shot Henry Rifle, invented in 1861, was widely regarded as one of the most popular and influential repeating rifles of the Civil War era. *Henry Presentation Rifle*, SMITHSONIAN INSTITUTION NATIONAL MUSEUM OF AMERICAN HISTORY, https://perma.cc/PEX9-AYCM. Soon after, the first Winchester rifle was produced, and it could hold 17 rounds in the magazine with one more in the chamber. *See* Kopel & Greenlee, *supra*, at 279–80. As a result, magazines holding over 15 rounds were commonly possessed already in the 1860s, 130 years before attempts to strictly regulate them would come along. Kopel, *The History of Firearm Magazines*, *supra*, at 869, 871.

50. Defendants have routinely enforced the challenged Denver and Colorado Bans from the time of their respective enactments to the present and can be expected to do so in the future unless they are enjoined.

## IV.    THE BAN'S EFFECT ON PLAINTIFFS

51. Plaintiff Ray Elliott is a law-abiding, responsible, adult resident of Denver, Colorado. Plaintiff Elliott owns semiautomatic centerfire rifles and semiautomatic handguns that are capable of accepting a magazine with a capacity above 15 rounds. He uses these firearms for lawful purposes including home defense, target shooting and practice, and self-defense. Because of the challenged Denver and Colorado laws and Defendants' enforcement thereof, Plaintiff Elliott does not possess magazines capable of holding over 15 rounds of ammunition. If it were lawful

for him to acquire and possess magazines with a capacity of above 15 rounds, Plaintiff Elliott would do so forthwith for both his semiautomatic centerfire rifles and his semiautomatic handguns.

52.    Plaintiff Trevor Alley is a law-abiding, responsible, adult resident of Denver, Colorado. Plaintiff Alley presently owns two firearms, but neither firearm is an "assault weapon" as defined by the Denver Ban. Plaintiff desires and intends to acquire, for lawful purposes including self-defense in the home, target shooting, training, and other lawful sporting uses, an AR-platform semiautomatic rifle of a type widely sold throughout the United States with standard magazines capable of holding more than fifteen rounds. Such rifles and magazines are commonly possessed by law-abiding citizens for lawful purposes. But for the Colorado and Denver Bans, Plaintiff Alley would promptly purchase and possess such a rifle and the standard magazines with which it is commonly sold. Plaintiff refrains from doing so solely because he fears Defendants' enforcement of the challenged laws against the acquisition and possession of the firearm and magazines he seeks to own. Plaintiff Alley, therefore, is denied the ability to acquire and possess arms that are in common use for lawful purposes, and he must either forgo constitutionally protected conduct or risk civil and criminal penalties.

53.    Plaintiff Michael Vitco is a law-abiding, responsible, adult resident of Denver, Colorado. Plaintiff Vitco desires and intends to acquire, for lawful purposes including self-defense in the home, target shooting, training, and other lawful sporting uses, a semiautomatic pistol with a standard magazine capable of holding more than fifteen rounds and an AR-platform semiautomatic rifle of a type widely sold throughout the United States with standard magazines capable of holding more than fifteen rounds. Such pistols, rifles and magazines are commonly possessed by law-abiding citizens for lawful purposes. But for the Colorado and Denver Bans, Plaintiff Vitco would promptly purchase and possess such a pistol and rifle and the standard

16

magazines with which they are commonly sold. Plaintiff Vitco refrains from doing so solely because he fears Defendants' enforcement of the challenged laws against the acquisition and possession of the firearms and magazines he seeks to own. Plaintiff Vitco, therefore, is denied the ability to acquire and possess arms that are in common use for lawful purposes, and he must either forgo constitutionally protected conduct or risk civil and criminal penalties.

## COUNT ONE

**Deprivation of Plaintiffs' Rights under the Second and Fourteenth Amendments to the United States Constitution**
**(42 U.S.C. § 1983 & *Ex parte Young*)**

54.    Plaintiffs incorporate by reference the foregoing paragraphs as if fully set forth herein.

55.    The Second Amendment to the United States Constitution provides: "A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed." U.S. CONST. amend. II.

56.    The Second Amendment is fully applicable to the States through the Fourteenth Amendment. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *id.* at 805 (Thomas, J., concurring).

57.    "Just as the First Amendment protects modern forms of communications, and the Fourth Amendment applies to modern forms of search, . . . the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Heller*, 554 U.S. at 582 (citations omitted).

58.    The firearms at issue in this case are unquestionably arms.

59.    The magazines at issue in this case are instrumental to the regular function of arms and are themselves protected arms.

17

60.    The firearms at issue in this case are the sorts of bearable arms in common use for lawful purposes that law-abiding people possess at home by the millions. They are, therefore, neither dangerous nor unusual and they cannot be banned.

61.    The magazines at issue in this case are the sorts of bearable arms in common use for lawful purposes that law-abiding people possess at home by the millions. They are, therefore, neither dangerous nor unusual and they cannot be banned.

62.    42 U.S.C. § 1983 creates a cause of action against state actors who deprive individuals of federal constitutional rights under color of state law.

63.    Members of FPC and CSSA such as Plaintiff Alley, Plaintiff Vitco, and Plaintiff Elliott are law-abiding, peaceable residents of Denver, Colorado, and citizens of the United States who wish to purchase and possess firearms that have been banned as "assault weapons" by Denver.

64.    Members of FPC and CSSA such as Plaintiff Alley, Plaintiff Vitco, and Plaintiff Elliott are law-abiding, peaceable residents of Denver, Colorado, and citizens of the United States who wish to purchase and possess ammunition magazines that have been banned as "large capacity" by Denver and the State of Colorado.

65.    Defendants have violated Plaintiffs' and Plaintiffs' members' right to keep and bear arms by precluding them from being able to carry, store, keep, manufacture, sell, or otherwise possess the firearms and magazines at issue in this case, because Defendants enforce Denv., Colo., Rev. Mun. Code ch. 38, art. IV, §§ 38-121(c), 38-121(g), and COLO. REV. STAT. § 18-24-302(1)(a).

66.    Defendants' enforcement of Denv., Colo., Rev. Mun. Code ch. 38, art. IV, §§ 38-121(c), 38-121(g), COLO. REV. STAT. § 18-24-302(1)(a), and the regulations, customs, policies, and practices related thereto infringes Plaintiffs' and Plaintiffs' members' right to keep and bear arms pursuant to the Second and Fourteenth Amendments to the United States Constitution.

18

67.     Defendants' enforcement of Denv., Colo., Rev. Mun. Code ch. 38, art. IV, §§ 38-121(c), 38-121(g), COLO. REV. STAT. § 18-24-302(1)(a), and the regulations, customs, policies, and practices related thereto forces Plaintiffs and Plaintiffs' members either to comply with the unconstitutional mandate—thereby being prevented from exercising their rights under the Second and Fourteenth Amendments to the United States Constitution—or be subjected to criminal prosecution.

68.     Therefore, as a direct and proximate result of the above infringement on Plaintiffs' and Plaintiffs' members' Second and Fourteenth Amendment protected rights, Plaintiffs and Plaintiffs' members will suffer an unlawful and irreparable deprivation of their fundamental constitutional right to keep and bear arms.

## **PRAYER FOR RELIEF**

69.     WHEREFORE, Plaintiffs respectfully pray for the following relief:

a.     Declare that the ban on commonly possessed semiautomatic firearms consisting of Denv., Colo., Rev. Mun. Code ch. 38, art. IV, § 38-121(c), and all related laws, regulations, policies, and procedures, violates the right to keep and bear arms, as guaranteed under the Second and Fourteenth Amendments to the United States Constitution, both facially and as-applied;

b.     Declare that the ban on commonly possessed ammunition magazines consisting of Denv., Colo., Rev. Mun. Code ch. 38, art. IV, § 38-121(g), and all related laws, regulations, policies, and procedures, violates the right to keep and bear arms, as guaranteed under the Second and Fourteenth Amendments to the United States Constitution, both facially and as-applied;

19

c.     Declare that the ban on commonly possessed ammunition magazines consisting of COLO. REV. STAT. § 18-24-302(1)(a) and all related laws, regulations, policies, and procedures, violates the right to keep and bear arms, as guaranteed under the Second and Fourteenth Amendments to the United States Constitution, both facially and as-applied;

d.     Permanently enjoin the City and County of Denver, the City and County of Denver's employees, officers, agents, and representatives, and all those acting in concert or participation with the City and County of Denver, from enforcing Denver's ban on semiautomatic firearms consisting of Denv., Colo., Rev. Mun. Code ch. 38, art. IV, § 38-121(c) and all related regulations, policies, and/or customs designed to enforce or implement the same;

e.     Permanently enjoin the City and County of Denver, the City and County of Denver's employees, officers, agents, and representatives, and all those acting in concert or participation with the City and County of Denver, from enforcing Denver's ban on ammunition feeding devices consisting of Denv., Colo., Rev. Mun. Code ch. 38, art. IV, § 38-121(g) and all related regulations, policies, and/or customs designed to enforce or implement the same;

f.     Permanently enjoin State Defendants, State Defendants' employees, officers, agents, and representatives, and all those acting in concert or participation with State Defendants, form enforcing the State's ban on ammunition feeding devices consisting of COLO. REV. STAT. § 18-24-302(1)(a) and all related laws, regulations, policies, and/or customs designed to enforce or implement the same;

e.    Award Plaintiffs attorney's fees and costs pursuant to 42 U.S.C. § 1988, and any other applicable law; and,

f.    Grant any and all other and further legal and equitable relief against Defendants as necessary to effectuate the Court's judgment, or as the Court otherwise deems just and proper.

Dated: June 30, 2026                                    Respectfully submitted,


                                                        */s/ David H. Thompson*
                                                        David H. Thompson
                                                        Peter A. Patterson
                                                        William V. Bergstrom
                                                        COOPER & KIRK, PLLC
                                                        1523 New Hampshire Ave., N.W.
                                                        Washington, D.C. 20036
                                                        Telephone: (202) 220-9600
                                                        Facsimile: (202) 220-9601
                                                        dthompson@cooperkirk.com
                                                        ppatterson@cooperkirk.com
                                                        wbergstrom@cooperkirk.com


                                            *Counsel for Plaintiffs*

21